United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI MARIE HYDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C-12-4320 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND GRANTING MOTIONS FOR REMAND**<br><br>**(Docket Nos. 15, 16)** |

## I. INTRODUCTION

On June 27, 2007, Sherri Marie Hyden protectively filed for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"). AR 81-86. She alleged disability since April 1, 2004 because of back, neck, and knee injuries, pain, fibromyalgia, and depression. AR 97. During administrative proceedings, her application was denied. AR 35-37. She requested a hearing before an Administrative Law Judge ("ALJ"), and appeared and testified at a hearing on April 30, 2010. AR 599-628. In a decision dated May 20, 2010, the ALJ found the Plaintiff was not disabled as defined by the Act because she could perform past work as a dispatcher or retail collections clerk. AR 13-29. When the Appeals Council denied Ms. Hyden's request to review the ALJ's decision, the ALJ's decision became the Commissioner's final decision. AR 2-4.

Ms. Hyden has exhausted her administrative remedies with respect to her claim of disability and has sought judicial review of the Commissioner's denial of benefits through this action. The Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Ms. Hyden has moved for

1  summary judgment for an award of benefits or, in the alternative, remand for additional proceedings.
2  Plaintiff's Motion for Summary Judgment ("Plaintiff's MSJ") (Docket No. 15.)  The Commissioner
3  has cross-moved for summary judgment or, in the alternative remand for further proceedings en lieu
4  of payment of benefits.  Defendant's Cross-Motion for Summary Judgment ("Def.'s Cross-MSJ")
5  (Docket No. 16).

## II. FACTUAL & PROCEDURAL BACKGROUND

Ms. Hyden claimed an inability to work based on injuries to her back, neck, knee and related pain.  She further claimed obesity, fibromyalgia, depression, anxiety and pain related to her shoulder surgery, and alleged disability beginning April 1, 2004.  AR 97.

The claim was initially denied on res judicata grounds on November 17, 2007, and again upon reconsideration on January 29, 2008.  AR 16.  Ms. Hyden requested a hearing on March 12, 2008 in front of an ALJ who found the claim should not have been denied on res judicata grounds because the claimant had submitted new and material evidence with her application.  *Id*.  The ALJ dismissed the request for hearing and returned the claim to the District Office so that a medical determination could be made.  *Id*.  As no medical determination was made, Ms. Hyden filed a written request for a hearing on March 1, 2010.  *Id*.  The hearing was conducted on April 30, 2010 in San Bernardino, California.  *Id*.  At the hearing the ALJ heard testimony from Ms Hyden, as well as a vocational expert and a medical expert.  *Id*.

On May 20, 2010, the ALJ issued a written decision, in which he concluded that Ms. Hyden suffered from severe impairments but that she was not entitled to disability benefits because she was capable of performing past relevant work as a dispatcher or retail collections clerk.  AR 29.  The ALJ evaluated Ms. Hyden's claim for disability using the five-step sequential evaluation process for disability required under 20 C.F.R. §§ 404.1520 and 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations.  Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities.  Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix.  Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments

> do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ found that Ms. Hyden did not engage in substantial gainful activity from the alleged onset date through her date last insured. AR 18. At the second step, the ALJ found that she suffered from severe impairments in her right knee, cervical spine, lumbar spine, left shoulder, left wrist, and from obesity and fibromyalgia. AR 18. At the third step, the ALJ determined that none of these impairments or combination of impairments were listed in or were the medical equivalent of an impairment listed in the relevant appendix. AR 19.

At step four, the ALJ found that Ms. Hyden had a residual functional capacity ("RFC") to perform a range of light work which requires the ability to lift no more than 20 pounds, with frequent lifting of 10 pounds. *See* 20 C.F.R. 404.1567(b) (defining "light work"). AR 20. The ALJ found that she could stand and walk for only one hour at a time, and up to four hours total in an eight-hour day; sit for only one hour at a time; could not walk on uneven or rough terrain, could not climb ladders, ropes or scaffolds, could not work at unprotected heights, could not work overhead, could not kneel or crawl, and could only occasionally bend, stoop, or crouch. AR 20. The ALJ concluded that her ability to participate in certain daily activities undermined the credibility of her allegations of disabling functional limitations. AR 22. The ALJ highlighted Ms. Hyden's ability "to drive a minivan, prepare simple foods, and go grocery shopping for light items." AR 21. Additionally, the ALJ inferred that when her children were four years old and three years old, she must have been responsible for the care of her children at some point while her husband was at work. AR 21.

The ALJ determined that "[t]he credibility of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." AR 22. The ALJ then proceeded with a detailed discussion of the clinical and diagnostic findings between the alleged onset date and the date last insured, and found that the evidence as a whole supports his assessment. AR 28. He

1  discussed each medical experts findings and made credibility determinations as to why some
2  findings were given more weight than others. AR 25-28.
3      Based on his RFC assessment in step four of the analysis, the ALJ found the claimant was
4  capable of performing past relevant work as a retail collections clerk or a dispatcher. AR 28. The
5  ALJ concluded that Ms. Hyden was not under a disability at any time from the alleged onset date,
6  April 1, 2004, through March 31, 2006, the date last insured. AR 29. The Appeals Council denied
7  Ms. Hyden's request for review, which made the ALJ's decision the final decision of the
8  Commissioner of Social Security in this case. AR 2. Ms. Hyden seeks judicial review of the
9  Commissioner's denial of benefits through this action.

### III.    DISCUSSION

A.    Legal Standard

    A reviewing court will only address the issues raised by the claimant in her appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based in legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997); 42 U.S.C. §§ 405(g); 1383(c)(3). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Id*. It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

    The reviewing court only considers the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he or she did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). "Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld." *Thomas v. Barnhart*, 278 F.3d 942, 954 (9th Cir. 2002). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

B.     Credibility of Ms. Hyden

The only issue raised by the claimant in this review is the ALJ's credibility determination with respect to Ms. Hyden's testimony. As such, this Court limits its review to this issue. Generally, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the agency to resolve. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks omitted). The ALJ must provide "clear and convincing" reasons to reject a claimant's subjective testimony, by specifically identifying "what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ must engage in a two-step analysis to determine whether testimony concerning severity of symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036. Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ's credibility finding must be properly supported by the record and be sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. *Bunnell v. Sullivan,* 947 F.2d 341, 345–47 (9th Cir.1991).

Ms. Hyden argues in her motion for summary judgment that the "ALJ improperly considered her testimony." Plaintiff's MSJ at 3. Specifically, Ms. Hyden contends that the Commissioner failed to articulate clear and convincing reasons for rejecting her testimony regarding her subjective symptoms. In the first step of the credibility analysis regarding the severity of Ms. Hyden's symptoms, the ALJ found that, "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 22. Since the ALJ found that there was objective medical evidence of an underlying impairment and did not make any specific findings of malingering, Ms. Hyden's appeal focuses on the contention that the ALJ did not properly conduct the second step of the credibility analysis.

### 1. Conflict between Subjective Testimony and Objective Evidence

In the second step of the credibility analysis, the ALJ found that Ms. Hyden's testimony regarding the severity of her symptoms "are not credible to the extent those statements are inconsistent with the residual functional capacity assessment herein." AR 22. Although Ms. Hyden's impairment could reasonably be expected to cause some of the alleged symptoms, there is evidence in the record that the subjective pain testimony was inconsistent with the objective medical evidence: MRI's of Ms. Hyden's neck and back were essentially normal (AR 280-82), her left shoulder improved after surgery (AR 193), and an MRI of Plaintiff's right knee in 2006 showed improvement from surgeries (AR 512).

The ALJ specifically found that her credibility was diminished "because those allegations [of pain] are greater than expected in light of the objective evidence of record." AR 22. A conflict between a claimant's subjective complaints and the objective medical evidence can be a factor in weighing a claimant's credibility when coupled with additional findings. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record). "But the [ALJ] may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*, 947 F.2d at 346-47. "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted). The regulations specifically prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence. 20 C.F.R. § 404.1529(c)(2) (we will not rejected your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements). Such reliance on non-corroborative medical evidence is particularly problematic where, as here, there was significant medical evidence supporting Ms. Hyden's testimony. *See* AR 23-27.

To the extent the ALJ rejected Ms. Hyden's testimony about the severity of her symptoms based solely on the lack of support by objective medical evidence, that decision was in error for the reasons stated above. To the extent, it was not the sole basis, the ALJ was required to articulate clear and convincing reasons to reject her testimony regarding the severity of her symptoms. In this regard, "while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2007). The Court thus turns to the other factors cited by the Commissioner as supporting the ALJ's determination.

2. <u>Daily Activities</u>

The ALJ referred to Ms. Hyden's daily activities as another reason to find her excess pain testimony not credible. AR 21. The first question is whether this finding is supporting substantial evidence.

The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "The [Ninth Circuit] has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). *See also*, *Gallant v. Heckler*, 753 F.2d 1450, 1453-55 (9th Cir. 1984) ("[T]he fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to constant pain.") "Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d at 603. Thus, an ALJ may consider daily living activities in the credibility analysis only where "a claimant engages in numerous daily activities involving skills that could be transferred to the workplace." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2008). *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ properly discredited

claimant's testimony on the basis of daily activities that included claimant helping her husband in managing finances).

Here, the ALJ did not make any finding that Ms. Hyden managed her own finances or the finances of others, skills relevant to her former job as a retail collections clerk. *See* AR 16-29. The ALJ did make a specific finding that Ms. Hyden's daily activities were transferable to the workplace on the assumption that while her husband was at work she must have been responsible for the care of her children when they were four years old and three years old. AR 21. During the relevant period of alleged disability and the date last insured (2004 through 2006), Ms. Hyden's two older children were between one and three and two and four years old. AR 21. Defendant points to Ms. Hyden's testimony that her husband worked to support her family (AR 603) as a reasonable basis to infer that Ms. Hyden took care of the children during the workday. AR 21. Defendant contends that "the ALJ quite reasonably concluded that Plaintiff was responsible for their care when they were between ages one and four." Def.'s Cross-MSJ at 4. In reaching his findings, an ALJ "is entitled to draw inferences logically flowing from the evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

However, the only evidence the Commissioner cites to support this finding is the fact that Ms. Hyden's husband worked. Def.'s Cross-MSJ at 4, *see also* AR 21. There is no other evidence from the record cited by the Commissioner that indicates Ms. Hyden was a primary care-giver for her children while her husband was at work during the relevant period of coverage. *See* AR 16-29. In fact, a closer examination of the administrative record indicates that there is evidence to support the opposite conclusion.

In particular, the ALJ failed to discuss evidence in the record that indicates that Ms. Hyden relied on other family members for providing support with household activities and child-care responsibilities when the children were younger. AR 127 ("My husband and family help with the children and animals from food to bathing to daily care."). The ALJ also did not discuss evidence in the record that indicates Ms. Hyden relied on her father to help her around the house with tasks like housecleaning. AR 615-16 ("My father will come down and help me [with housecleaning] . . ."). Ms. Hyden further explained that her father comes by to help with laundry because "bending over to

get the laundry in and out of the machines is too much for my back and the bending of the knee." AR 616. This evidence suggests that Ms. Hyden's knee-pain and back pain when bending over may have prevented her from lifting small children, or otherwise acting as the primary care-giver. It supports the inference that other family members, like her father, looked after the children while her husband worked. On this record, the ALJ's assumption that Ms. Hyden took care of the children while her husband was at work is not supported by substantial evidence.

Moreover, even if she did assume responsibility to care for the children, the ALJ failed to analyze with any specificity the transferability of those tasks to her ability to work full time. *Vertigan*, 260 F.3d at 1050. *Cf. Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity). *Leftwich v. Gardner*, 377 F.2d 287, 289 (4th Cir. 1967) ("Congress did not intend to exclude from the benefits of the Act those disabled persons who because of character and a sense of responsibility for their dependents are most deserving.").

Hence, the record evidence about Ms. Hyden's daily activities, even when combined with the medical evidence discussed above, does not constitute clear and convincing reasons for discrediting her testimony. *Smolen*, 80 F.3d at 1281; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

### 3. Evidence of Conservative Treatment

Defendant argues in its cross-motion for summary judgment that because Plaintiff admitted relief from sleep apnea through the use of a CPAP machine and that her pain medication, Darvocet, diminished her pain to a "very mild level," the ALJ properly discredited Plaintiff's pain testimony. Def.'s Cross-MSJ at 4-5 (*citing Tommassetti*, 533 F.3d 1039-40, for the proposition that the ALJ properly discredited claims of disabling pain when conservative treatment, including pain medications and physical therapy, effectively relieved the pain).

An ALJ may properly infer that a claimant's pain was not all disabling in light of the fact that she did not seek a more aggressive treatment plan. *Tommasetti*, 533 F.3d at 1039 (finding claimant's favorable response to conservative treatment like physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset undermined claimant's reports of the disabling nature of his pain). In fact, "evidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding the use of over-the-counter pain medication to be evidence of conservative treatment sufficient to discount claimant's testimony of disabling pain). For example, a claimant's testimony that "she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received" and properly discounted. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (where the failure to prescribe and failure to request any serious medical treatment was the basis for discounting plaintiff's credibility).

As a threshold matter, this Court only considers the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ notes that Ms. Hyden admitted pain medication diminished her pain "[t]o a very mild level, but it never goes away completely." AR 21, *citing* AR 613. The ALJ also noted that Ms. Hyden admitted that her CPAP machine improved her sleep apnea, although her testimony was that it was not entirely effective. AR 21, *citing* AR 612-13 ("With the sleep apnea, it does seem to help. I still don't sleep that well, but it stops where I stop breathing at night."). Defendant argues that because Ms. Hyden indicated that her problems sleeping are a reason for her alleged disability, and also stated that she had positive results from use of the CPAP machine, this discounts her credibility. Def.'s Cross-MSJ at 4, *citing* AR 97 ("I sleep only three hours a night"). However, the ALJ did not identify either the use of a CPAP machine or Darvocet as a specific reason for discounting Ms. Hyden's credibility. While the ALJ briefly mentions the use of a CPAP machine and Darvocet, the ALJ did not rely on this in his determination of Ms. Hyden's credibility. *See* AR 16-29 (ALJ Decision). Thus, this is not a basis for this Court to affirm the ALJ's determination.

The Commissioner's reliance on *Tommasetti* is misplaced. Unlike *Tommasetti*, the ALJ did not find that Ms. Hyden failed to seek an aggressive treatment program with respect to either her sleep apnea or pain. The ALJ did not rely on any finding of "conservative treatment" to undermine Ms. Hyden's pain testimony. *See* AR 21-22. Again, this Court cannot affirm the ALJ's denial of benefits on a basis upon which the ALJ did not rely.

### 4. Summary

Other than the inconsistency of Ms. Hyden's testimony with some of the objective medical evidence and the assumption that she worked in caring for her children, the ALJ did not rely on any other basis to discredit Ms. Hyden's testimony. The ALJ did not, *e.g.*, "rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). *See* AR 16-29.

The burden was on the Commissioner in discrediting Ms. Hyden's pain testimony to articulate clear and convincing reasons for doing so. No such reasons are found in the ALJ's opinion.

## C.  Remand

The decision whether to remand for further proceedings or to reverse and award benefits falls within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon its likely utility). But where there are outstanding factual issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Although the Court finds error here, it shall not automatically credit as true Ms. Hyden's claims regarding her disabling symptoms. There is a split in the Ninth Circuit as to whether the credit-as-true rule is mandatory or discretionary. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (stating that "we are not convinced that the 'crediting as true' doctrine is mandatory in the Ninth Circuit" because, "[d]espite the seemingly compulsory language in [several cases], there are other Ninth Circuit cases in which we have remanded solely to allow an ALJ to make specific credibility findings.").

Moreover, even if the Court were to credit Ms. Hyden's excess pain testimony as true, it is not clear that the ALJ would be required to award her benefits. *See Varney v. Sec'y of Health and Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) (where record is fully developed there is no need to remand for further proceedings). For example, in *Orn*, the daily activities of the claimant included "sometimes" reading, watching television, and coloring in coloring books, which failed to establish that the claimant "has 'transferable' skills to be a surveillance system monitor" a "position that requires sustained concentration and attention, as well as the ability to act immediately in emergencies." 496 F.3d at 369. In this case, the ALJ found Ms. Hyden was able to work as either a dispatcher or retail collections clerk. AR 28. Although the daily activities of Ms. Hyden are not obviously transferrable to the work of a dispatcher, they may be, especially for the sedentary position of a retail collections clerk. AR 28.

This Court finds that the record regarding Ms. Hyden's daily activities, particularly the extent of her child-care activities, is not sufficiently developed, and as a result, it is unclear if the ALJ is required to award benefits. Furthermore, the record is not fully developed regarding the issue of potentially conservative treatment which, if properly established in the record, could also undermine her reports regarding disabling nature of pain. *See Tommasetti*, 533 F.3d at 1039 (*citing Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.")).

The Court concludes the ALJ erred in making his credibility determination and that remand for further proceedings rather than an award of benefits is appropriate. In his credibility determination, if there is no evidence of malingering, the Commissioner should provide specific, clear and convincing reasons supported by substantial evidence for rejecting plaintiff's testimony.

///
///
///
///
///
///

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **GRANTS** both parties' motions to remand for further proceedings consistent with this opinion.

This order disposes of Docket Nos. 15 and 16.

IT IS SO ORDERED.

Dated: April 22, 2013

_____
EDWARD M. CHEN
United States District Judge

13